UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CATHY T.,

             Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

20-CV-01812-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

Plaintiff Cathy T.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 12) is granted.

## BACKGROUND[2]

On January 15, 2014, Plaintiff filed for SSI, alleging disability beginning November 16, 2012.  The claim was denied initially on February 25, 2014.  Plaintiff filed a written

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

request for hearing on February 26, 2014. On May 13, 2016, a hearing was held before Administrative Law Judge Bryce Baird in Jamestown, New York. The ALJ issued an unfavorable decision on August 3, 2016.  The Appeals Council denied review.  Plaintiff then appealed to this Court.  This Court remanded the case for further proceedings.  The Appeals Council Notice of Remand was issued on July 15, 2019.

On September 18, 2020, another administrative hearing was held before ALJ Baird.   (Administrative Transcript ["Tr."] 447-491).  The ALJ issued an unfavorable decision on October 27, 2020. (Tr. 426-445). Plaintiff elected to file the instant appeal in this Court, rather than proceed with a review by the Appeals Council.

## DISCUSSION

### I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2014, the application date.  (Tr. 431).  At step two, the ALJ found that Plaintiff had the following severe impairments: depressive disorder; lumbar degenerative disc disease with history of fusion in 2017; and asthma.  (Tr. 431-32).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 432-33). Prior to proceeding to step four, the ALJ determined that Plaintiff had the following RFC:

> [C]laimant has the [RFC] to perform light work as defined in 29 CFR 416.967(b) except the claimant can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, can sit for up to six hours in an eight hour day, can stand or walk for four hours in an eight hour day, she is limited to work that would allow her to sit for 30 minutes after 20 minutes of standing or walking, and stand or walk for 15 minutes after 30 minutes of sitting. She can occasionally balance, kneel, stoop, crouch and climb stairs, but can never crawl or climb ropes, ladders or scaffolds. She cannot be exposed to excessive heat or excessive cold, or excessive moisture or humidity, cannot have concentrated exposure to pulmonary irritants, such as odors, fumes, dusts, gases and poor ventilation, and is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days.

(Tr. 433-37).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 437). At step five, the ALJ found that there exist jobs in significant numbers in

the national economy that Plaintiff can perform. (Tr. 438). Therefore, the ALJ found that Plaintiff was not disabled since January 15, 2014, the application date. (Tr. 438).

IV.   _Plaintiff's Challenge_

Plaintiff argues that the case must be remanded because the ALJ improperly relied upon his own lay interpretation of the medical evidence and such interpretation conflicted with the medical opinion evidence.  The Court disagrees.

The ALJ properly assessed Plaintiff's RFC, relying on substantial evidence in the record. The RFC is an administrative finding that is dispositive of whether a claimant is disabled under the Act, and represents the most an individual can do despite her limitations. 20 C.F.R. § 416.945; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (July 2, 1996); _Curry v. Comm'r of Soc. Sec._, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). The ALJ has the responsibility to determine a claimant's RFC, based on all the relevant medical and other evidence in the record. 20 C.F.R. § 416.945(c); _see Snell v. Apfel_, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ); _Matta v. Astrue_, 508 F. App'x 53, 56 (2d Cir. 2013) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs all evidence available to render an RFC finding consistent with the record as a whole) (citing _Richardson v. Perales_, 402 U.S. 389, 399 (1971)). The Second Circuit has held that the RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." _McIntyre v. Colvin_, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (citing _Cichocki v. Astrue_, 729 F.3d 172, 177 (2d Cir. 2013)).

Plaintiff argues, *inter alia*, that the ALJ did not "tether" the medical evidence to his RFC finding. However, the Second Circuit has ruled that it is the role of an ALJ to consider "the medical and other relevant evidence in the record in its totality to reach an RFC determination." *Curry*, 855 F. App'x at 48 n.3. The Second Circuit has acknowledged that "although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Thus, if the Court finds that there is substantial evidence supporting the Commissioner's determinations, including the RFC, the Commissioner's decision must be upheld, even if there is also substantial evidence for Plaintiff's position. *See Brault*, 683 F.3d at 448; *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (Commissioner's decision affirmed where substantial evidence for both sides).

Contrary to Plaintiff's assertions, substantial evidence of record, including the opinion of orthopedic surgeon, Dr. Russell Lee, Plaintiff's treatment notes, and activities of daily living, supports the ALJ's RFC finding for light work with certain restrictions, including the limitation that Plaintiff could only work in jobs that would allow her to sit for 30 minutes after 20 minutes of standing or walking, and stand or walk for 15 minutes after 30 minutes of sitting. (Tr. 433).

The ALJ properly relied on the September 27, 2019, opinion of Dr. Lee, and appropriately assigned some weight to his opinion as it was based on a personal evaluation of Plaintiff, and because portions of his opinion were supported by the objective medical findings in the record. (Tr. 436, *referring to* Tr. 707-10). Specifically, Dr.

Lee opined that Plaintiff had moderate limitations for activities involving bending, lifting, prolonged sitting and standing, and walking great distances. (Tr. 433, *referring to* Tr. 710). Additionally, Dr. Lee opined that Plaintiff should avoid smoke, dust, and known respiratory irritants. (Tr. 710). He more specifically opined that Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, sit for two hours at a time and five hours in a day, could stand for one hour at a time and two hours in a day, and walk for 20 minutes at a time and one hour in a day. (Tr. 436, *referring to* Tr. 712). Dr. Lee also opined that Plaintiff could continuously perform reaching and manipulative activities and continuously operate foot controls, frequently balance, stoop and kneel and occasionally crouch and crawl. (Tr. 436, *referring to* Tr. 714).

The ALJ could properly accord Dr. Lee's opinion some weight because it was supported by many of Dr. Lee's objective findings, including, for example, that on examination, Plaintiff did not appear to be in distress; though she had a slight limp favoring the left side and could not walk on her heels, she could walk on her toes; she could do half a squat; she did not need an assistive device, and did not need help changing for the examination, getting on and off of the examination table, and could rise from the chair without difficulty. (Tr. 709). Plaintiff demonstrated full range of motion of the cervical spine and all joints in the upper and lower extremities. (Tr. 435, *referring to* Tr. 709). She had normal muscle strength, no muscle atrophy and normal sensation. (Tr. 435, *referring to* Tr. 709). Plaintiff had some restriction in lumbar spine motion, but no spinal or paraspinal tenderness, or joint or sciatic notch tenderness, or trigger points. (Tr. 435, *referring to* Tr. 709). Plaintiff had positive straight leg raises on the right, but at 45 degrees supine and 5 degrees sitting; her straight leg raising tests were negative on the left. (Tr. 435, *referring*

*to* Tr. 709). Plaintiff did not appear to be in distress; though she had a slight limp favoring the left side and could not walk on her heels, she could walk on her toes; she could do half a squat; she did not need an assistive device, and did not need help changing for the examination, getting on and off the examination table, and could rise from the chair without difficulty. (Tr. 709). Plaintiff demonstrated full range of motion of the cervical spine and all joints in the upper and lower extremities. (Tr. 435, *referring to* Tr.709). She had normal muscle strength, no muscle atrophy and normal sensation. (Tr. 435, *referring to* Tr. 709). Plaintiff had some restriction in lumbar spine motion, but no spinal or paraspinal tenderness, or sacroiliac joint or sciatic notch tenderness, or trigger points. (Tr. 435, *referring to* Tr. 709).  Plaintiff had positive straight leg raises on the right, but at 45 degrees supine and degrees sitting; her straight leg raising tests were negative on the left. (Tr. 435, *referring to* Tr.709).

Dr. Lee's opinion that Plaintiff could, *inter alia*, lift and carry up to 20 pounds occasionally, frequently lift and carry up to 10 pounds, and that she could sit for two hours at a time, stand for one hour at a time, and walk for 20 minutes at a time, is also consistent with treatment notes in the record. Treatment notes showed that, among other things, though Plaintiff has a history of degenerative conditions in her lumbar spine, she sometimes chose conservative treatment, reported at times that her pain was manageable, and, after surgery, noted improvement in her condition. (Tr.434; *see also e.g.*, Tr. 206, 209,324, 327,711, 768-802783-88, 793, 795,801). For example, in January 2013, x-rays from an emergency room visit showed grade I anterolisthesis of L4 on L5 with associated bilateral pars defects and mild loss of disc height at that level. (Tr. 434, *referring to* Tr. 206). An MRI of the lumbar spine in June 2013 showed minimal grade I

anterolisthesis at L5 to a transitional vertebrae secondary to bilateral L5 spondylosis, moderate bilateral foraminal stenosis secondary to posterior disc bulge and a left central posterior disc extrusion without any significant spinal stenosis. (Tr. 434, *referring to* 204, 207-16, 226-31). Additionally, Plaintiff underwent several lumbar epidural injections at L5-S1 and diagnostic/therapeutic medial branch blocks on the left at L3-L4, L4-L5 and L5-S1. (Tr. 434, *referring to* Tr. 297-321). In December 2013, Plaintiff also underwent percutaneous radiofrequency facet rhizotomy on the left at L3-L4, L4-L5 and L5-S1, but she reported no pain relief with those procedures. (Tr. 435, *referring to* Tr. 312, 314). Though Plaintiff had somewhat limited range of motion and positive straight leg raise tests in a seated position on examination in July 2014, she had normal lower extremity function. (Tr. 434, *referring to* Tr. 324). Plaintiff chose conservative pain management. (Tr. 434, *referring to* Tr. 324, 327). In October 2015, although Plaintiff reported that she sometimes had bad pain, it was generally manageable and mild; x-rays from 2015 and 2016 showed no significant changes. (Tr. 435, *referring to* Tr. 322-31, 768).

Further, an MRI of the lumbar spine in August 2016 showed grade II anterolisthesis with mild progression as compared to the 2013 MRI, with moderate to advanced disc space narrowing, hypertrophic facet arthropathy and ligamentum flavum thickening, resulting in moderate right and mild left foraminal narrowing and minimal central canal stenosis. (Tr. 435, *referring to* Tr. 771). While Plaintiff reported worsening numbness in her right leg with some left leg numbness in November 2016, after a discectomy and fusion with interbody cage, anterior plate and screw fixation in March 2017, she reported improvement in her pain, for which she used Tramadol. (Tr. 435, *referring to* Tr. 768-802 783-88). By July 2017, though Plaintiff had some residual pain in the lower left region and

some right anterior thigh pain, she ambulated well and could rise from a seated position fairly readily. (Tr. 435, *referring to* Tr. 793).

In September 2017, although Plaintiff reported persistent right extremity numbness, her low back pain levels had improved. (Tr, 435, *referring to* Tr. 795). In April 2018, Dr. Lewis noted that her surgical results looked good on a CT scan, but he suspected some irritation of the L4 nerve root causing her right leg symptoms; he offered surgery, but Plaintiff did not want to have additional surgery. (Tr. 435, *referring to* Tr. 799). Plaintiff did not follow up again until one year later, in May 2019, reporting continued intermittent right lower extremity paresthesia; she still did not want to undergo additional surgery, and she indicated that she benefited a lot from the March 2017 surgery. (Tr. 435, *referring to* Tr. 801). She was instructed to follow up as needed. (Tr. 435, *referring to* Tr. 801).

Although the medical records generally supported portions of Dr. Lee's opinion, the ALJ assigned only some weight to Dr. Lee's opinion because he found that other aspects of his opinion were unsupported. For example, as the ALJ noted in his decision, the "conclusion that [] Plaintiff can stand for only two hours and walk for only one hour appears based more on [] [Plaintiff's] subjective reports," and "the ability to walk for only 1 hour does not appear consistent with the opinion that [] [she] could lift and carry up to 10 pounds frequently (which is defined as up to 2/3 of a workday)." (Tr. 436). Although the ALJ assigned some weight to Dr. Lee's opinion, and only incorporated portions of his opinion into the RFC, an ALJ is not required to include every part of a medical opinion into his RFC finding. *See Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (stating that "it was within the province of the ALJ" to accept parts of a doctor's opinion and reject

others). *See also Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (though the ALJ's conclusions "may not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision" plaintiff's RFC was proper because it "took account of the opinions of all . . . experts and the notes of other treatment providers").

Plaintiff's testimony about her activities of daily living also supports the ALJ's RFC finding for light work with a sit/stand option, as Plaintiff testified that she could walk for 15 to 20 minutes before she needs to sit down and could sit for about 45 minutes before needing to get up. (Tr. 33). The ALJ's RFC finding is consistent with Plaintiff's testimony as the ALJ incorporated this limitation into the RFC by limiting Plaintiff to jobs that allowed her to sit for 30 minutes after 20 minutes of standing or walking, and standing or walking for 15 minutes after sitting, giving Plaintiff the benefit of the doubt.  (Tr. 433; *see also* Tr. 435, *referring to* Tr. 33). Further, Plaintiff reported that she could dress and shower daily, cook, clean (including vacuum), shop, do laundry, do the dishes, attend appointments, and manage her money. (Tr. 436, *referring to* Tr. 721). She also reported that she engaged in social activities with her mother and neighbor, and that her hobbies included crocheting, reading, and watching television. (Tr. 436, *referring to* Tr. 721). *See, e.g.*, *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (the ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of the RFC finding for light work).

Finally, with respect to the  assessment of physician's assistant (PA) Eileen Smith, from Plaintiff's primary care office, who found that Plaintiff could, *inter alia*, rarely lift or carry 10 pounds, and was limited in her ability to sit, stand, and walk, and used Oxycodone through 2018, the ALJ could reasonably assign little weight to those findings

because they were not supported by or consistent with the notes from Plaintiff's primary care office and the other evidence in the record. (Tr. 437, *referring to* Tr.992-98; *see also* Tr. 936, 943,949, 951). Specifically, as the ALJ explained, treatment notes from PA Smith's office consistently showed normal gait and did not show significant difficulties, other than Plaintiff's subjective reports of pain. (Tr. 437, *referring to* Tr. 920-91; *see e.g.*, Tr. 937, 944, 952, 957, 962). Additionally, Plaintiff's subjective reports to that office, including the use of Oxycodone through 2018, are inconsistent with her reports to Dr. Lewis that she stopped using narcotic pain relief shortly after surgery because it was too strong. (Tr. 437, *referring to* Tr. 788). Therefore, because PA Smith's assessment was arguably inconsistent with the other evidence in the record including treatment notes from Plaintiff's primary care office, the ALJ could properly assign this assessment little weight. The ALJ's detailed consideration of Plaintiff's medical conditions, course of treatment, physical examination findings and reported activities, as well as portions of Dr. Lee's opinion, supported the ALJ's finding that Plaintiff could perform a range of light work. (Tr. 16-18); *see Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (finding that ALJ's RFC determination was supported where the ALJ relied on a "variety" of evidence).

Plaintiff argues that instead relying on medical opinion evidence, the ALJ relied on his own lay interpretation of the medical data, which conflicted with medical opinion evidence and complex medical findings. Plaintiff also asserts that the ALJ relied on improper lay assessment to fill in the gaps after he gave little or limited weight to the medical opinions of record and proceeded to interpret complex raw medical findings into a functional assessment. However, as demonstrated in more detail above, the ALJ did not rely on his own lay interpretation in reaching the RFC finding, but rather, he

considered the totality of the evidence, including the opinion of Dr. Lee, as well as Plaintiff's subjective complaints of pain, to reach an RFC finding supported by substantial evidence.

In sum, in his detailed decision, the ALJ concluded that Plaintiff's RFC is a range of light work with certain limitations after considering the entire relevant evidence of record, including objective medical findings and opinion evidence, as well as Plaintiff's reported activities of daily living. (*See* Tr. 429-39). The ALJ's RFC conclusion "afford[s] an adequate basis for meaningful judicial review, appl[ied] the proper legal standards, and [is] supported by substantial evidence such that additional analysis would be unnecessary or superfluous" to be upheld. *McIntyre*, 758 F.3d at 150 (citations and internal quotation marks omitted). Additionally, Plaintiff has not shown that she needs a more restrictive RFC finding than the one assessed by the ALJ, as is her burden. *See Poupore*, 566 F.3d at 305-06 (burden on Plaintiff to show that she cannot perform the RFC as found by the ALJ). Therefore, because the ALJ's RFC finding is supported by substantial evidence, his decision must be affirmed. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision.").

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and defendant's motion for judgment on the pleadings (Dkt. No.12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      February 16, 2023
              Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

- 16 -